# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### OCALA DIVISION

**VEATTA O. CARTER,**

      **Plaintiff,**

**v.**                                              **Case No: 5:16-cv-501-Oc-10PRL**

**COMMISSIONER OF SOCIAL
SECURITY**

      **Defendant.**

_____

## REPORT AND RECOMMENDATION[1]

Plaintiff appeals the administrative decision denying her applications for Disability Insurance Benefits ("DIB") and Social Security Income ("SSI"). Upon a review of the record, the memoranda, and the applicable law, I submit that the Commissioner's decision should be affirmed.

### I.     BACKGROUND

Plaintiff filed applications for DIB and SSI, alleging disability beginning January 14, 2011. (Tr. 300–08). The claims were denied initially, and upon reconsideration. (Tr. 99–142). At Plaintiff's request, a hearing was held before Administrative Law Judge Douglas A. Walker (the "ALJ"), who then issued a notice of unfavorable decision, finding Plaintiff not disabled. (Tr. 143–61).

---

[1] Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions. *See* F. R. Civ. P. 72(b)(3); F. R. Crim. P. 59(b)(2); 28 U.S.C. § 636(b)(1)(B); Local Rule 6.02. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

The Appeals Council, however, vacated that decision and remanded the case. (Tr. 162–166). In the Appeals Council's Order, it noted, among other issues, the following concerns with the ALJ's decision:

> The hearing decision indicates the claimant has a severe impairment of "varicosities" at step 2 of the sequential evaluation, however there is no restriction in the residual functional capacity assessment corresponding to this impairment. The claimant has alleged due to ongoing problems with swelling she can stand and walk one hour, she had problems remaining in one position and she advised she has to elevate her legs (Hearing testimony).
>
> The hearing decision acknowledged the claimant underwent endovenous radiofrequency ablation numerous times on the bilateral legs, but points to an admission that she was not compliant with compression stockings, and a treatment note dated March 6, 2012, reflecting that the swelling in her legs had improved greatly (Decision, page 8). However, the hearing decision did not evaluate the claimant's allegation that she needed to elevate her legs, avoid prolonged standing and sitting, and change positions frequently. In June 2010, the claimant's cardiologist, Nagender Reddy, MD diagnosed venous insufficiency. He recommended that the claimant should engage in "leg elevation whenever possible," wear compression hose, engage in weight reduction, regular exercise/walking and avoidance of prolonged immobility (Exhibit B21F pg. 29). Six months later, Dr. Reddy indicated that despite compliance, claimant's problems continues. He recommended endovenous ablation (Exhibit B21F pg.15-16). After the ablation treatment, it was noted that her legs were less swollen and she had improved exercise tolerance (Exhibit B21F pg. 11-12). However, in follow-ups in March 2012, June 2012 and August 2012, the claimant voiced complaints of ongoing swelling and numbness in the left ankle and Dr. Reddy's physical examinations noted edema (Exhibit B2 l F). In the most recent notes from August 2012, the claimant reported that while her left ankle was not as swollen as before, she continued to have edema in the afternoon. Dr. Reddy noted symptomatic venous insufficiency in the bilateral ankles. She was ordered to continue with compression stockings (Exhibit B21F pg.1-3).
>
> The evaluation of the claimant's functional restrictions resulting from "varicosities" or symptomatic venous insufficiency in the bilateral ankles, is insufficient. In addition, the residual functional capacity assessment does not reflect the limitations found by Dr. Reddy, and there is an inadequate explanation as to the inconsistency. Further consideration is required.

(Tr. 163–64). Thus the Appeals Council ordered the ALJ to, upon remand, do the following:

> Give further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations (Social Security Ruling 96-8p). In so doing, evaluate the treating source opinion pursuant to the

provisions of 20 CFR 404.1527 and 416.927 and Social Security Rulings 96-2p and 96-5p, and explain the weight given to such opinion evidence. As appropriate, the Administrative Law Judge may request the treating sources to provide additional evidence and/or further clarification of the opinion and medical source statements about what the claimant can still do despite the impairment (20 CFR 404.1520b and 416.920b). The Administrative Law Judge may enlist the aid and cooperation of the claimant's representative in developing evidence from the claimant's treating sources.

If warranted by the expanded record, obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Rulings 83-12, 83-14 and 96-9p). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566 and 416.966). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

(Tr. 164–65). Upon remand, and after a second hearing, the ALJ found again that Plaintiff is not disabled. (Tr. 13–37, 38–57).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Tr. 19). At step two, the ALJ determined that Plaintiff had the following severe impairments: depression, anxiety, obesity, sleep apnea, and varicose veins. (Tr. 19).

At step three, the ALJ found that Plaintiff did not have an impairment or a combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 19–21). Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform a reduced range of sedentary work:

She would require work that is simple and unskilled with a SVP of 2 or below. She could lift and carry 10 pounds occasionally and less than 10 pounds frequently, sit for 6 hours, and stand and walk for 2 hours in an 8-hour workday. She should avoid the frequent ascending and descending of stairs and she should avoid pushing and pulling motions with her lower extremities within the aforementioned weight

restrictions. Due to mild to moderate pain and medication side effects she should avoid hazards in the workplace such as unprotected areas of moving machinery, heights, ramps, ladders, and scaffolding, and on the ground, unprotected areas of holes and pits. She can perform the following postural activities occasionally: balancing, stooping, crouching, kneeling, and crawling, but she should avoid the climbing of ropes, scaffolds, or ladders exceeding 6 feet. She has non-exertional mental limitations which frequently affect her ability to concentrate upon complex and detailed tasks, but she would remain capable of understanding, remembering, and carrying out simple job instructions, making work related judgments and decisions, responding appropriately to supervision, coworkers and situations, and dealing with changes in a routine work setting.

(Tr. 21–27).

At step four, the ALJ determined that Plaintiff was unable to perform her past relevant work. (Tr. 27). At step five, however, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are other jobs that exist in significant numbers in the national economy that the Plaintiff can perform—charge account clerk, surveillance system monitor, call out operator. (Tr. 27–28).

Thus the ALJ found that Plaintiff was not disabled from January 14, 2011, through the date of the decision. (Tr. 28). Then, the Appeals Council denied Plaintiff's request for review making the hearing decision the final decision of the Commissioner. (Tr. 1–6). With her administrative remedies exhausted, Plaintiff filed the instant appeal. (Doc. 1).

## II.   STANDARD OF REVIEW

A claimant is entitled to disability benefits when he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

The Commissioner has established a five-step sequential analysis for evaluating a claim of disability, which is by now well-known and otherwise set forth in the ALJ's decision. *See* 20

CFR §§ 404.1520(a), 416.920(a); *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The claimant, of course, bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).

The scope of this Court's review is limited to a determination of whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). Indeed, the Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). This is clearly a deferential standard.

## III. DISCUSSION

Plaintiff presents three arguments on appeal: (1) the RFC is not supported by substantial evidence, (2) the ALJ improperly considered the medical evidence, and (3) the ALJ erroneously relied on the Vocational Expert's testimony. I submit that the ALJ's decision is due to be affirmed.

### A. Substantial evidence supports the RFC

Plaintiff asserts that due to her obesity and varicosities she has a very limited ability to stand and walk and needs to elevate her legs while sitting. She concludes that the ALJ erred by failing to include these limitations in the RFC and "failed to base his decision on the combined effects of plaintiff Carter's exertional limitations." (Pl.'s Br. at 18). She also notes the Vocational Expert's testimony that a hypothetical claimant who would need to elevate his or her feet (without bending the knees) during the workday would be unable to perform any work. (Pl.'s Br. at 18).

It is well established that in making a disability determination, the ALJ must consider the combined effects of all impairments. *Davis v. Shalala*, 985 F.2d 528, 533 (11th Cir. 1993); *Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir.1990); *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987). Where there is more than one impairment, the claimant may be found disabled even though no one impairment considered individually would be disabling. *Walker*, 826 F.2d at 1001. The ALJ must evaluate the combination of the claimant's impairments with respect to the effect they have on the ability to fill the duties of work for which he or she is otherwise capable of performing. *Lucas v. Sullivan*, 918 F.2d 1567, 1574 (11th Cir. 1990). I submit that the ALJ considered Plaintiff's impairments in combination, including her obesity and her varicosities, and that the RFC, which does not contain any limitation for lower extremity (that is, foot) elevation, is supported by substantial evidence.

As an initial matter, the ALJ found that Plaintiff has the severe impairments of obesity and varicose veins and that she did not have "an impairment or a combination of impairments" that met or equaled a listed impairment. (Tr. 19–21). The Eleventh Circuit has held that such findings are sufficient to establish that the ALJ considered the combined effect of the claimant's

impairments during her evaluation.  *See Hutchinson v. Astrue*, 408 F. App'x 324, 327 (11th Cir. 2011) ("The ALJ specifically stated that [the plaintiff] did not have an 'impairment, individually or in combination' that met one of the listed impairments in evaluating step three of the process. That statement shows that the ALJ considered the combined effects of [the plaintiff's] impairments during her evaluation."); *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991).

Likewise, the ALJ explicitly considered Plaintiff's claims of exertional limitations and her claim that she needs to elevate her legs after an hour of sitting.  (Tr. 22).  And the ALJ explicitly found that Plaintiff's claims of limitation were not entirely credible (Tr. 22)—a credibility finding that Plaintiff does not challenge here.

To the extent Plaintiff bases this argument on her varicosities, difficulty walking, motor deficits, and repeated swelling of the legs, the ALJ noted that "[w]hile the record does indicate that edema has been noted on some occasion and that the claimant does have varicose veins that can be painful, this has been treated with ablation and the claimant has reported improvement in her condition."  (Tr. 25).  Indeed, Nagender Reddy, M.D., who is Plaintiff's treating cardiologist and treated her varicosities, repeatedly noted that Plaintiff suffered from leg edema, which consistently improved upon ablation treatment, but there was no evidence of deep vein thrombosis (Tr. 677, 685, 687, 689–90, 703); that she should exercise one-hundred-fifty minutes with moderate intensity and seventy-five minutes of vigorous intensity (Tr. 683, 698, 700); and the doctor consistently limited treatment to physical exercise (and Plaintiff's tolerance for such exercise appeared to improve), ablation, compression socks, and over the counter pain relievers.  (Tr. 677, 683, 687, 691–92, 694, 696, 698).  The ALJ also noted that Dr. Reddy advised Plaintiff to elevate

her legs on only one occasion (Tr. 703), but that Dr. Reddy never imposed any activity limitations on Plaintiff and instead recommended regular exercise and walking (Tr. 683, 685, 687, 698, 700).

As to Plaintiff's obesity, the ALJ noted her July 2013 laparoscopic vertical sleeve gastrectomy and that from mid-year 2013 to mid-year 2014 her weight dropped dramatically (from three-hundred-sixty-three pounds (Tr. 798) to two-hundred-sixty-one pounds (Tr. 794)). (Tr. 24). Post-surgery, Plaintiff had normal physical exams and was advised to exercise. (Tr. 794–97). The ALJ also identified a treatment note from October 2014, which appears to be issued by a nurse practitioner named Barbara Murphy. (Tr. 24, 887–88). The treatment note stated that Plaintiff weighed two-hundred forty-eight pounds, had a full range of motion in her extremities, was generally healthy, was pain free in her muscles and joints, had no edema, and had no erythema. (Tr. 24, 887).

The ALJ also considered the opinion evidence. Although Dr. Reddy made several findings that Plaintiff could not walk, was unable to work, and (on only one occasion) advised that Plaintiff should elevate her legs whenever possible, the ALJ properly gave little weight to Dr. Reddy's opinion, see *infra* section III.B. For instance, the ALJ found that the limitations Dr. Reddy opined of were inconsistent with the doctor's repeated advisements that Plaintiff both walk and exercise and the fact that Dr. Reddy (as noted above) never limited Plaintiff's physical activities. (Tr. 26). Also, the ALJ gave great weight to the medical opinion of a non-examining state-agency physician, Bettye Stanley, D.O., who found that Plaintiff could perform up to light work, which is a higher level of work than the limited sedentary range that the ALJ found Plaintiff could perform. (Tr. 27, 125–29, 136–40). According to the ALJ, Dr. Stanley's opinion is based on, and consistent with, the other medical evidence. (Tr. 27).

Thus I submit that the RFC, which does not contain any limitations for elevating Plaintiff's lower extremities, is supported by substantial evidence and the ALJ properly considered Plaintiff's obesity and varicosities.

### B. The ALJ properly considered the medical evidence

Next, Plaintiff argues that the ALJ erred by according little weight to the opinion of Dr. Reddy, her treating cardiologist. On several occasions, Dr. Reddy completed *Medical Verification Forms* in which he opined that Plaintiff is unable to work. (Tr. 609–10, 613, 786). On these *Medical Verification Forms* Dr. Reddy diagnosed Plaintiff with numerous impairments: anxiety, depression, learning disability, obesity, sleep apnea, hypertension, hypothyroidism, and anemia. Dr. Reddy also completed two *Functional Capacity Evaluations*.[2]

On those *Functional Capacity Evaluations*, Dr. Reddy checked numerous boxes indicating that Plaintiff has the following limitations: Plaintiff can only lift five pounds occasionally and one pound frequently; she can sit only one hour in an eight-hour work day, can only stand or walk for one hour before needing to sit, and must alternate sitting and standing to relieve pain every fifteen minutes; she should avoid environmental pollutants based on her allergies; she can only occasionally push, pull, balance, grasp, twist, handle, use fine manipulation, or reach; she can rarely bend or stoop; and she can never work with or around hazardous machinery, or climb stairs. (Tr. 611–12, 778–88). Dr. Reddy also opined that Plaintiff's pain will frequently be severe enough to interfere with the attention and concentration needed to perform even simple work tasks. Plaintiff must be able to lay down or elevate her legs to alleviate pain. (Tr. 611–12, 778–88). According to Dr. Reddy, Plaintiff's obesity, chronic back pain, and allergies constitute the medical

---

[2] There is some question as to whether Dr. Reddy signed a *Functional Capacity Evaluation* form dated June 2010, which was apparently completed by a nurse practitioner. (Tr. 611). For purposes of this appeal, I will assume that the June 2010 *Functional Capacity Evaluation* constitutes Dr. Reddy's opinion.

basis for these above-mentioned limitations.[3]   (Tr. 611–12, 778–88).

The ALJ must state with particularity the weight given to different medical opinions, including non-examining state agency physicians, and the reasons therefor.  *Winschel v Comm'r of Social Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).   The opinions of treating physicians are entitled to substantial or considerable weight unless "good cause" is shown to the contrary.  *Crawford v. Comm'r of Soc. Sec.*, 363 F. 3d 1155, 1159 (11th Cir. 2004).   Good cause exists "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."  *Phillips* v. *Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004).   With good cause, an ALJ may disregard a treating physician's opinion, but he "must clearly articulate [the] reasons" for doing so.  *Id*. at 1240–41.   In this case, the ALJ accorded little weight to Dr. Reddy's opinion for several reasons, reasons that constitute good cause for discrediting the opinion.   (Tr. 26).

First, to the extent that Dr. Reddy opined that Plaintiff has exertional limitations, the ALJ found that these limitations are inconsistent with Dr. Reddy's own treatment notes and the record as a whole.  (Tr. 26).   Certainly, Dr. Reddy consistently and repeatedly advised Plaintiff to both walk and exercise.   (Tr. 683, 685, 687, 698, 700).   The ALJ further noted that Dr. Reddy advised Plaintiff to elevate her legs on only one occasion and the doctor never imposed any physical activity limitations on Plaintiff or even required her to attend physical therapy.   (Tr. 26, 703). The ALJ also stated that "[t]here is no indication in the record that the claimant is unable to lift more than 5 pounds or that she cannot sit for longer than one hour."   (Tr. 26).   As to Plaintiff's

---

[3] These limitations are taken from two different *Functional Capacity Evaluations*, one of which is dated October 2012 and the other is dated June 2010.   (Tr. 611–12, 778–88).   Where the two *Functional Capacity Evaluations* conflict over the severity of Plaintiff's limitations, the most severe limitations are listed above.

non-exertional limitations, the ALJ noted that Dr. Reddy never advised Plaintiff to attend counseling. (Tr. 26).

Second, the ALJ noted that the Dr. Reddy's opinion is "conclusory and do[es] not indicate why the claimant is deemed unable to work at all" and is "comprised mainly of unexplained checkmarks and the [ALJ] is unable to ascribe much weight to mere checkmarks." (Tr. 26). Indeed, a checked box without any textual explanation or supporting medical evidence is of limited value. *Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 903 (11th Cir. 2011) (reasoning that an ALJ may discredit conclusory assertions contained in a questionnaire that consist of only checked boxes and that lack any supporting explanations); *see Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (noting that good cause exists if the treating physician's opinion is conclusory). And Plaintiff fails to cite here any of Dr. Reddy's notes, or other clinical or laboratory findings, that are consistent with the severe limitations that the doctor opined of. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) ("The weight afforded a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence as to claimant's impairments.").

These reasons, as enumerated by the ALJ in his opinion, constitute sufficient good cause to discount the opinion of treating physician Dr. Reddy. *See Phillips*, 357 F.3d at 1240–41 (finding that the ALJ's determination that the treating physician's opinion should be given little weight was supported by substantial evidence where the doctor's assessment conflicted with the doctor's own treatment notes); *Good v. Astrue*, 240 F. App'x 399, 403 (11th Cir. 2007) (finding that the ALJ articulated good cause to discount the opinion of the plaintiff's treating doctor where the ALJ stated that the doctor's opinion was "inconsistent with [the doctor's] own notes").

Lastly, I note that Plaintiff asserts that the ALJ failed to comply with the Appeals Council's Order. (Pl.'s Br. at 24, 26 n.22; Tr. 163–65). According to Plaintiff, the Appeals Council order required the ALJ to obtain additional evidence from Dr. Reddy. But this is not entirely accurate: the Appeals Council order only required the ALJ to obtain additional information from treating sources, sources like Dr. Reddy, *as appropriate*:

> Give further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations (Social Security Ruling 96-8p). In so doing, evaluate the treating source opinion pursuant to the provisions of 20 CFR 404.1527 and 416.927 and Social Security Rulings 96-2p and 96-5p, and explain the weight given to such opinion evidence. *As appropriate*, the [ALJ] *may* request the treating sources to provide additional evidence and/or further clarification of the opinion and medical source statements about what the claimant can still do despite the impairment.

(Tr. 163–65) (emphasis added). Thus, as the ALJ was not required to obtain additional evidence from Dr. Reddy, the ALJ did not fail to comply with the Appeals Council's Order.

## C. The ALJ posed a complete hypothetical to the Vocational Expert and properly relied on the Vocational Expert's testimony

Finally, Plaintiff makes several arguments related to the Vocational Expert's ("VE") testimony and the ALJ's reliance on that testimony. I will address two of these arguments, which are related, first. (Pl.'s Br. at 27–28). Then I will separately address Plaintiff's argument that she is illiterate. (Pl.'s Br. at 28–29).

1. As to the two (at least somewhat) interrelated arguments, Plaintiff first argues that the ALJ, in the hypothetical that he posed to the VE, conflated the concept of vocational preparation with the concept of limitations in concentration, persistence, and pace—thus Plaintiff concludes that the ALJ posed an improper hypothetical to the VE. Second, Plaintiff then argues that the testimony that the VE provided, which was based on the supposed improper hypothetical,

conflicted with the information contained in the *Dictionary of Occupational Titles* and—according to Plaintiff—the ALJ failed to obtain an explanation from the VE about this supposed conflict.

As to his first argument, Plaintiff argues that the ALJ posed an improper hypothetical to the VE.   In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments.   *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002).   Though the hypothetical question must include all of the claimant's limitations, an ALJ is not required to include findings in the hypothetical that are not supported by the record.   *Crawford*, 363 F.3d at 1161.   And the ALJ's RFC assessment need not mirror the opinion of every doctor, nor is the ALJ required to adopt all of the limitations that a doctor assessed.   *See Castle v. Colvin*, 557 F. App'x 849, 853 (11th Cir. 2014).

Here, the ALJ posed a hypothetical to the VE that included the following non-exertional limitations: work that is simple and unskilled; simple tasks or at least routine tasks; mental limitations that would frequently affect the ability to focus on complex and detailed tasks; the ability to understand, remember, and carry out job instructions; can make work-related judgments and decisions; can respond appropriately to supervision, coworkers and work situations; can deal with changes in a routine work setting; and can only perform jobs with a Specific Vocation

Preparation ("SVP") of two or below.[4]  (Tr. 53–54).  From this hypothetical, the VE identified

three occupations that Plaintiff (or someone with these hypothetical limitations) could perform:

charge account clerk, surveillance monitor, and call out operator.  All of these jobs have a

reasoning level of three and a SVP of two.  *See* DICOT 205.367-014, CHARGE-ACCOUNT CLERK,

1991 WL 671715; DICOT 379.367-010, SURVEILLANCE-SYSTEM MONITOR, 1991 WL 673244;

DICOT 237.367-014, CALL-OUT OPERATOR, 1991 WL 672186.

Now, Plaintiff presents on appeal a very brief, but technical argument about how the ALJ

conflated and confused the concept of vocational preparation with the concept of limitations in

concentration, persistence, and pace in the hypothetical posed to the VE by equivocating "simple

instructions" with "unskilled work"—thus failing (according to Plaintiff) to account for her

moderate limitations in concentration, persistence, and pace.[5]  (Pl.'s Br. at 27–28).  Yet, as

explained below, I submit that the hypothetical presented to the VE contained all of the non-

---

[4] Here is the actual language from the hearing. After limiting the hypothetical to a person of
Plaintiff's age, education, past work experience, height and weight, the ALJ stated the following:

> The [hypothetical] individual is going to require work which is simple and unskilled or
> very low semiskilled in nature. These would be tasks performed so frequently as to be
> considered routine, even though the tasks themselves might not be considered simple. To
> put it another way, work with an SVP of three or below. Assume in this first hypothetical,
> the individual could carry no more than 10 pounds; stand and or walk for two hours; sit for
> a total of six hours; should avoid frequent ascending and descending stairs; should avoid
> pushing and pulling motions with her lower extremities. The individual should avoid
> hazards in the workplace. Postural activities: occasional balancing, stooping, crouching,
> kneeling and crawling but not the climbing of ropes or scaffolds and/or ladders exceeding
> six feet. Assume further the individual has non-exertional mental limitations which
> frequently affect her ability to concentrate upon complex or detailed tasks, but the
> individual would remain capable of understanding, remembering and carrying out the job
> instructions we just defined. Could make work-related judgements and decisions; could
> respons[d] appropriately to supervision, coworkers and work situations; could deal with
> changes in a routine work setting.

(Tr. 53–54). Then the ALJ posed this further limitation, "Second hypothetical, simple and unskilled only,
that's SVP2 or below."  (Tr. 54).

[5] The ALJ found, at step three, that Plaintiff has moderate difficulties in concentration, persistence,
and pace.  (Tr. 20).

exertional limitations included in the RFC (Tr. 21, 53–54) (a RFC that is supported by substantial evidence); sufficiently accounted for Plaintiff's limitations in concentration, persistence, and pace; and, consequently, the hypothetical was proper.

Indeed, though the hypothetical posed was not (perhaps) a model of clarity, it certainly included limitations to simple work; unskilled work; limitations that would frequently affect Plaintiff's ability to focus on complex and detailed tasks; a capability of understanding, remembering, and carrying out job instructions; a capability to make work-related judgments and decisions; a capability to respond appropriately to supervision, coworkers and work situations; and a capability to deal with changes in a routine work setting. *See, e.g.*, *Markuske v. Comm'r of Soc. Sec.*, 572 F. App'x 762, 767 (11th Cir. 2014) (finding that the ALJ sufficiently accounted for moderate difficulties in maintaining attention by incorporating similar limitations into the hypothetical posed to the VE). Notably, Plaintiff simply does not argue that (or explain how) these limitations fail to account for her limitations in concentration, persistence, and pace. Nor does she argue that the hypothetical posed to the VE somehow failed to include all of the non-exertional limitations included in the RFC. Therefore, to the extent that Plaintiff argues that the ALJ failed to pose a hypothetical to the VE that accounted for her limitations in concentration, persistence, and pace, this argument should be rejected.

Second, though the ALJ relied on the VE's testimony in finding that Plaintiff could perform a significant number of jobs in the national economy, Plaintiff argues that reliance was improper, because the VE's testimony conflicted with the information contained in the *Dictionary of*

*Occupational Titles* ("DOT").[6]  Specifically, Plaintiff argues that the ALJ failed to obtain

clarification from the VE on the reasoning level requirements of the occupations that the VE

identified (such reasoning levels are contained in the DOT, and the VE identified those occupations

based, of course, on the hypothetical that I addressed above).  Plaintiff argues that this failure

matters as the reasoning levels required to perform the occupations the VE identified exceed the

ability of an individual with the limitations included in the hypothetical posed by the ALJ.[7]

To support her argument Plaintiff points to Social Security Ruling ("SSR") 00–4p.  (Pl.'s

Br. at 28).  That ruling states that when a VE provides evidence about the requirements of a job

or occupation, the ALJ has an affirmative responsibility to ask about any possible conflict between

that VE's testimony and the DOT.  *See Leigh v. Comm'r of Soc. Sec.*, 496 F. App'x. 973, 975

(11th Cir. 2012).  When the VE's testimony is inconsistent with the DOT, the ALJ must resolve

this conflict before relying on the VE to determine whether the individual is or is not disabled.  *Id.*

Still, SSR 00–04p merely obligates the ALJ to ask the VE if there is a conflict and if the VE

identifies a conflict the ALJ is required then—and only then—to address the conflict in his decision

and resolve it.  *Brijbag v. Astrue*, No. 8:06-CV-2356-T-MAP, 2008 WL 276038, at *2 (M.D. Fla.

Jan. 31, 2008) (holding that "the ALJ need not independently corroborate the VE's testimony and

should be able to rely on such testimony where no apparent conflict exists with the DOT").

---

[6] The DOT is a publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy.  *See Estrada v. Barnhart*, 417 F. Supp. 2d 1299, 1302 (M.D. Fla. Feb. 24, 2006).  Although the DOT "provides occupational information on jobs in the national economy" it "is not comprehensive" nor "the sole source of admissible information concerning jobs."  *Jones v. Comm'r of Soc. Sec.*, 423 F. App'x 936, 938 (11th Cir. 2011) (*quoting Jones v. Apfel*, 190 F.3d 1224, 1230 (11th Cir. 1999)).

[7] To the extent that Plaintiff faults the ALJ for not obtaining from the VE clarification on the reasoning levels of these occupations (Pl.'s Br. at 18), I note that Plaintiff's counsel did obtain such clarification during the hearing.  (Tr. 55).

But "when the VE's testimony conflicts with the DOT, the VE's testimony 'trumps' the DOT." *Jones*, 190 F.3d at 1229–30 (page number omitted). Indeed, SSR 00–4p anticipates that the DOT may not contain all relevant information, and the VE may obtain information about a particular job's requirements from sources other than the DOT, such as reliable publications or the VE's own experience in job placement or career counseling. *Chambers v. Comm'r of Soc. Sec.*, 662 F. App'x 869, 873 (11th Cir. 2016) ("[E]ven if there was a conflict between the DOT and the jobs identified by the vocational expert in response to the hypothetical question, the testimony of the vocational expert outweighs the DOT because the DOT is not the sole source of admissible information concerning jobs."); *Kerridge v. Comm'r of Soc. Sec.*, No. 6:10-cv-1009-Orl-DAB, 2011 WL 3739025, at *10 (M.D. Fla. Aug. 22, 2011).

Plaintiff asserts here that the representative occupations the VE testified that she could perform require greater reasoning levels than the reasoning levels that an individual who is limited to only simple work and repetitive tasks has. (Pl.'s Br. at 27–28). Yet as the government notes (Gov.'s Br. at 17), a similar argument has already been rejected in this circuit. *See Chambers*, 662 F. App'x at 873. In *Chambers*, the plaintiff, Henry Chambers, argued that he could not perform an occupation with a SVP of two and a reasoning level of three (namely, the occupation of hospital food worker), because that occupation's reasoning requirements were inconsistent with his limitation of only being able to perform simple work—i.e., Chambers argued that an occupation with a reasoning level or two or three requires a greater "mental capacity than that which would be required for simple work." *Id.*

The Eleventh Circuit rejected Chamber's argument and stated that "[a]s for jobs labeled with reasoning levels of two or three, they may also be jobs with simple tasks." *Id.* The Court reasoned that "although the job of hospital food worker has a reasoning level of three, it also has

a SVP of two, indicating that it requires, at a maximum, one month of time to learn the techniques, acquire the information, and develop the facility needed for average performance in the job." *Id.* (citing DOT § 319.677-014). The Court then concluded that the job of hospital food worker, which has an SVP of two and a reasoning level of three, is "consistent with unskilled work, which needs little or no judgment to do simple duties that can be learned on the job in a short period of time, usually within 30 days." *Id.* (citing 20 C.F.R. § 404.1568(a)).

Here, I cannot say that the information provided in the DOT and the VE's testimony conflict. As the ALJ did in *Chambers*, the ALJ here imposed the limitation of simple work and the VE identified three occupations that have an SVP of two (that is, the occupations are unskilled) and with reasoning levels of three—the same SVP and reasoning level of the job at issue in *Chambers*. Further, the ALJ expressly requested that the VE notify the ALJ if any conflicts between the VE's testimony and the DOT arise, but the VE never did. (Tr. 52–55). Thus the ALJ properly relied on the VE's testimony.

2.      At the end of Plaintiff's brief, she contends (for what appears to be the first time in this case) that she is "functionally illiterate." (Pl.'s Br. at 28–29). This contention, as I will clarify below, is actually an assertion that another supposed conflict between the information contained within the DOT and the VE's testimony exists.

Plaintiff begins this argument by noting the ALJ's mistake in finding that there is no formal IQ testing in the record. (Pl.'s Br. at 28–29; Tr. 23). Plaintiff then asserts that the record does indeed contain formal IQ testing, that this testing shows that she is functionally illiterate, and that—based on this alleged functional illiteracy—she cannot perform the occupations identified by the VE. (Pl.'s Br. at 28–29).

As to the formal IQ testing that Plaintiff identifies, the testing was performed by Linda S. Bojarski, Psy.D., in August 2006 and involved the Wechsler Adult Intelligence Scale-ID, and selected subtests of the Woodcock-Johnson-ID Tests of Achievement. (Tr. 574–77). Those records show that Plaintiff suffers from a reading disorder, a disorder of written expression, and that her "[g]rade equivalents ranged from two years, three months, to three years, eight months." (Tr. 576–77).

"It is the Commissioner's burden to establish that a claimant is literate." *Lorenzo v. Comm'r of Soc. Sec.*, No. 6:10-CV-369-ORL-18, 2011 WL 2681986, at *6 (M.D. Fla. July 7, 2011). "[S]omeone [is] illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling." 20 C.F.R. § 404.1564(b)(1). Here, the ALJ appears to have never explicitly discussed Plaintiff's literacy but found—without any elaboration—that Plaintiff has at least a high school education and is able to communicate in English. (Tr. 27); *see* 20 C.F.R. § 404.1564(b)(4) ("High school education and above means abilities in reasoning, arithmetic, and language skills acquired through formal schooling at a 12th grade level or above. We generally consider that someone with these educational abilities can do semi-skilled through skilled work.").

As an initial matter, I note that Plaintiff herself testified that she spends "[m]ore or less" of her free time "trying to read" and she enjoys reading the Bible; she reported that she can read and understand the English language in her *Disability Report* form; she completed the twelfth grade in 2002; and she graduated high school with a special diploma. (Tr. 50, 66, 346, 348); *see* 20 C.F.R. § 404.1564 ("We will ask you how long you attended school and whether you are able to speak, understand, read and write in English . . . ."). But Plaintiff does not even challenge the

ALJ's finding that she has at least a high school education. Accordingly, I cannot submit that the ALJ erred by finding that she does have at least a high school education; the unchallenged evidence shows that she completed the twelfth grade and did graduate high school, albeit with a special diploma. (Tr. 66, 348); *see Black v. Comm'r of Soc. Sec.*, No. 2:09-CV-762-FTM-36, 2011 WL 1002811, at *1 (M.D. Fla. Mar. 22, 2011) (affirming the ALJ's decision and rejecting the plaintiff's argument that she is disabled based upon her functional illiteracy as she admitted to being able to read, reading as a hobby, and completing the tenth grade). And, even assuming that Plaintiff can only read at a second or third grade level, she does not explain how (or even cite any case law, statute, regulation, or rule that shows how) this level of reading skill constitutes "functional illiteracy."

Thus I cannot say that the ALJ erred by not finding Plaintiff illiterate. Put differently, substantial evidence supports the ALJ's implicit decision to not find that Plaintiff is illiterate: (1) Plaintiff told the ALJ that she tries to read as a hobby, including reading the Bible (Tr. 50); (2) Plaintiff herself reported on a *Disability Report* that she can read English and write more than her own name in English (Tr. 346); and (3) Plaintiff does not challenge the ALJ's finding that she obtained at least a high school education. *See Shumake v. Astrue*, No. 3:09CV265/RV/EMT, 2010 WL 3001430, at *11 (N.D. Fla. July 9, 2010), *report and recommendation adopted,* No. 3:09CV265/RV/EMT, 2010 WL 3001424 (N.D. Fla. July 27, 2010) (finding that the ALJ did not err by failing to find that the plaintiff was illiterate when the plaintiff reported that he could read and understand English and write more than his name in English, reported to a disability determinations worker that he was able to engage in reading, and his background reflected that he attended school through at least the ninth grade). Finally, even assuming that Plaintiff is functionally illiterate, she has not shown how this error matters.

First, when considering unskilled work activity with a SVP of only two in jobs requiring simple, routine, and repetitive tasks, literacy is of only limited significance. *Davila v. Colvin*, No. 8:12-CV-2334-T-TGW, 2014 WL 495525, at *13 (M.D. Fla. Feb. 5, 2014); 20 C.F.R. § Pt. 404, Subpt. P, App. 2, § 200.00(i) ("While illiteracy or the inability to communicate in English may significantly limit an individual's vocational scope, the primary work functions in the bulk of unskilled work relate to working with things (rather than with data or people) and in these work functions at the unskilled level, literacy or ability to communicate in English has the least significance."). The occupations at issue here are all unskilled with SVPs of two.

Second, Plaintiff, for her part, makes a very technical argument as to why she cannot perform the occupations the VE stated she could, as those jobs require a higher degree of reading skill (according to the information contained in the DOT) than she has. Certainly, what Plaintiff asserts is that under the DOT, "the hypothetical jobs in the VE's testimony" all require that an individual "be able to '[r]ead a variety of novels, magazines, atlases, and encyclopedias. Read safety rules, instructions in the use and maintenance of shop tools and equipment, and methods and procedures in mechanical drawing and layout work. Write reports and essays with proper format, punctuation, spelling, and grammar, using all parts of speech. [And, be able to] [s]peak before an audience with poise, voice control, and confidence, using correct English and well-modulated voice.'" (Pl.'s Br. at 29) (quoting Appendix C - Components Of The Definition Trailer, 1991 WL 688702).

I thus find that this argument is really an argument that another inconsistency exists between the VE's testimony and the DOT—i.e., an individual with Plaintiff's education and reading skill cannot perform the occupations that the VE testified she could. But the ALJ, by explicitly adopting the testimony on Plaintiff's education level from the first hearing (*see* Tr. 41–

42; 66), advised the VE (during the hearing at issue here) that Plaintiff graduated high school with a special diploma (a finding that Plaintiff does not challenge here) and the VE identified occupations that Plaintiff could perform based on that level of education. Put differently, the ALJ posed a hypothetical that included Plaintiff's level of education and the VE responded by stating that an individual with that education, and the other limitations included in the hypothetical, could perform the occupations of charge account clerk, surveillance monitor, and call out operator. And as previously noted, the VE, though asked to do so by the ALJ, never identified any conflicts between the information contained within the DOT and the VE's testimony. Thus I cannot submit, on this basis, that that the information provided in the DOT and the VE's testimony conflict.

## IV.    RECOMMENDATION

For the reasons stated above, it is respectfully **RECOMMENDED** that the ALJ's decision be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

**Recommended** in Ocala, Florida on May 11, 2017.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy